I don't think she's quite settled. Won't you give us just a moment? You may begin when you are ready. Good morning, Your Honors, and may it please the Court. We have two issues here today, Americans with Disabilities Act and preemption. I'm going to begin with the ADA. My clients in these three consolidated cases all have particular physical medical reasons for not being able to be injected with the Emergency Use Authorization and PrEP Act investigational drugs that were mandated by Terminix. Each of them communicated this to their supervisor and each were terminated. Terminix failed to engage in an interactive process to try and accommodate this disability. The question is, what is a disability under the Americans with Disabilities Act? It's a physical impairment that substantially limits a major life activity. And what's the physical impairment here? The physical impairment is that they are not able to be injected with these drugs on the advice of their doctors. A physical impairment... Let me hear the definition again. You said it's a physical impairment. It's a physical impairment because they cannot be... The physical impairment is that they cannot be injected with these drugs based on the advice of their physicians. A physical impairment is a physiological disorder, which includes neurological, cardiological, and... Does it have to be something that impedes or impairs your ability to work? It has to... Yes, it has to do... In fact, it has to prevent you from performing a range of jobs or a class of jobs that require them to be injected with these drugs. This is a new issue in employment. So this is a new requirement by employers, and specifically Terminix. So the requirement renders you disabled? No, the inability to satisfy the requirement. Just like any other work requirement, it's that once the employees were injected, that the injections perform a physical protection within their body, and the key... The interoffice memorandum that was distributed to the employees, and that's in the record, says, quote, it is our responsibility to our customers and fellow employees to do what we can to prevent infection, close quote. So the employer is setting this up. In the employer's mind, this is to protect customers. These are pest control technicians who go out and are in contact. I guess what concerns me is all three of these people are able to do their job. Very well. So what's the... So the disability is, if I get a vaccine, that I may not be able to do the job anymore? No, sir. The disability is, I cannot fulfill this job requirement of receiving the injection because, for instance, Mr. Chauvin had a previous Bell's palsy reaction to a flu shot. I understand that, but... And you have a doctor... Do they all three have the same doctor, by the way? No, no, sir. And these are three different conditions. One's neurological, one's cardiological, and one's an immune system issue. But they're all physical. They're all a physical inability. So... And this is no different than... Look, the courts have... Well, you're calling it a physical inability, but you're proceeding under the Americans with Disability Act. Correct. Which to me says there's got to be a disability in order for you to bring a claim under this act. Correct. And yes... You can go ahead. I'm having trouble getting to first base, which is there's got to be a disability. I'm sure it's the same problem you had in district court as well, and maybe it was improperly decided. But it does seem to me the argument is there that you are one step removed from the ADA, as opposed to having the disability already. It's what happens if you take the medication, if your clients take the vaccine, will cause problems to them. It's not so much they're going to be unable to do their job, it's just a serious health risk for them if they were going to take this medication. So it doesn't seem to quite fit into disability law. It fits because... Disability employment law. It fits because it is now a job requirement. It is part of the duties of a technician at Terminex to be able to receive this injection so that they theoretically, according to the employer, protect the customers. So now this is a job requirement. It's a duty to protect your customers by receiving this. You know, this is similar to... Let's take the last case, the one we just heard. What if the job requires that you drive and you lose your license and you can't drive or you're disabled? Exactly. It's a requirement that you drive. Let's take a CDL license. If you need a commercial driver's license to fulfill the duties of your job, and you are physically unable to either complete the test or do the studying or complete the number of hours to obtain that license and you cannot do it, well, then you are disabled. You have an inability to obtain that license to become a commercial driver. So whether it's obtaining a license or let's say you're wearing a uniform to the... Correct. These people are suffering from a physical condition that renders them incapable of doing their job. Not doing their... It's the prospect of getting a shot that you... I'm going to stop. But Judge Graves, these employees must have this injection in order to do their jobs. It wasn't there a requirement for 27 years and 25 years and two and a half years that these employees were there. But now it is a new requirement in order to continue doing your job, in order to, quote, protect the customer. So if they are not able to physically accept it because there's a danger to them... I'm going to suggest, because here's where I am. Yes, sir. I mean, there may be a claim for what's happening with your clients out there someplace, at least in my mind. There may be a claim. But under the Americans with Disabilities Act, I don't see where a claim lies. But go ahead with it. Let me ask you this. I understood there to be the exception that if you cannot get the vaccine that we won't make you get it. Why was that not used with these three? I'm assuming it was used with some people. It was used. It was used in all three. No, no. Why wasn't it used by Terminex? In other words, why were these people fired versus I'm sure there were some people who were not who were in the same position. So what happened? What caused these three to go whereas others didn't? Exactly, Your Honor. In fact, we filed five lawsuits in district court. Two individuals have religious exemptions and asserted those. And those were accepted by the trial court. They were denied by Terminex. Yes, Terminex said, oh, if you bring me something verified by a physician, there's an exception to this rule. But there was no exception. No one got an exception. No one got an exemption from Terminex. The only reason that the trial court kept the other two was because there was a religious component to it. So these individuals who did not have a religious component but still has a physical inability to take these shots and fulfill the duties of the job and continue working there and allegedly protecting customers, that's their inability to fulfill the job requirements. Were these the only three that were fired? All five were fired and these were only three that were fired that were not. Were the five that you represented the only five in the entire country of Terminex that were fired? That seems a little. This is a Terminex franchise in Houma, Louisiana, and all five were the only ones to submit a request for an exemption and they were all denied. That is correct. So we encourage the court to follow the Doe's versus Pittsburgh case. In that case, identical situation. And the court there said medical conditions that prevented plaintiffs from receiving the COVID-19 vaccine fit within the A.D.A.'s definition of impairment. The employees who had a medical condition preventing them from getting the vaccine and were denied the exemption were substantially limited from engaging in. Is that your only case?  It's newish. I mean, the fact is, COVID has, I guess, good or bad, been out for a while. It's bad, obviously, but it's been a while now. So y'all are not the first people to mention COVID to us. Not COVID, but in this. Well, COVID is what brought about the vaccine. Your Honor, COVID brought about emergency use authorization. Of these vaccines that your clients are contesting. And because of that, Terminex determined that it thought it was a good idea to try to protect customers by requiring all of its employees to be injected with these drugs. And how many other employers were requiring it? Because you said, you know, this is something you have to show that we, And I understand if everybody in the United States just said, we will not let a single person in our door who doesn't have a vaccine, that that might be a different animal. But that the animal in this country is there's plenty of people opposed to vaccines, including owners of companies. Opposition is so different than a physical inability when your doctor. I'm well aware. But what I'm asking is what proof is there that this is something that they could not get a job somewhere else? Well, and they may be able to get a job somewhere else, but they cannot get a job in any range or class of jobs that requires these shots. So now seems a bit swirly. I mean, in other words, if all companies that that I could work for, if I went back to being a lawyer and every company that hires every firm that hires a lawyer required a vaccine that I couldn't get. That would be different from this one firm that I'm working at requiring it and all these other firms not. If they're right. That had that hypo. Am I right on that? You are correct. If the employer is requiring it as a job duty, a job requirement. Yes, they are disabled. If there's another pest control company out there that does not require it, they're not disabled from that job. We're not saying they're disabled from all pest control jobs. They are disabled from the range or class of jobs that requires these shots because their doctors say do not. Seems to be. Setting it up as we don't like X. And so anybody who wants X, that's all there is. But you're you just basically admitted that not every pest control company is requiring this. So why does this matter? Even if what these guys are doing is not very ethical. Because this because this is their employer. This is their employer that is that is setting a new job requirement for them where they've been for 25 and 27 years. And now suddenly they have a new job requirement that they cannot fulfill. And so they are disabled from this job from this job in any class of jobs that require one of these injections. I see I have two three minutes. I do need to discuss preemption. You need to answer our questions. Yes, sir. You don't have any more removed to what you want to discuss. If there's any questions. You can talk about preemption. That's fine. Okay. The Prep Act is an extraordinary statute. There's no state level equivalent. So here the emergency use of unlicensed drugs is an in a national emergency is is in the exclusive province of the executive and legislative, the federal legislative and executive branches. So, too, it is there's original jurisdiction within the federal courts. The trial court used used the standard that there there's no federal cause of action. If there's no right of action built into the statute, that's an incomplete test. Because in the Grable test. In the gravel case, they said the test is it's not it's not limited to just having a right of action. But if there is a preemption provision in the statute, then that brings the federal issues to the surface. It makes them a substantial issue before the court. Merrill, the Merrill Dow versus Thompson case on which the trial court relied. Are you saying there's a preemption provision in this statute? In the prep act, there is a in the prep act. There is a preemption provision that says no state shall shall establish, enforce or continue in effect with any law that is in conflict with the prep act or the or by extension, the FDA and the EUA statute. The Louisiana at will employment doctrine. Is in conflict with the prep act because the voluntariness is the key for the prep act. Voluntariness. Because when the prep act was set up, the government said if you take the prep act products are voluntary, that's the key. And there was a tradeoff there. Because the federal government can't even mandate that people take these shots. So what was the tradeoff? The tradeoff was that the employee must be able to give consent. It's voluntary. So if the tradeoff was there's no immunity, there's immunity. Any case law, any authority to support that proposition that an employer's right to terminate an employee for refusing to get the vaccine is preempted by the prep act? Our position is that the use of the at will employment doctrine and the enforcement of the at will employment doctrine to force someone now to engage in an involuntary program is the key. Because the prep act immunized. That's a no I don't have a case or yes there is a case. No, the case is the Grable case. When we're talking about jurisdiction, original jurisdiction, within the federal court, it's the Grable case saying that you have to look at the statute and say it's not just that there's no private right of action. But if there's a preemption provision in the statute, that gives courts the ability to exercise original jurisdiction. I see my time is up. Well, go ahead and finish your response. That was my response. All right, counsel. Good morning. May it please the court. My name is Amanda Olmstead and I represent Terminix Pest Control, Inc. The appellee in this case. This case is brought after a 12B6 motion was 12B6 motions were granted. The lower court correctly decided these motions. If all of these allegations in the pleadings are taken as true, they don't qualify as a disability under the ADA. Okay, but why did even if it's not a disability, why did your company say if you had a medical reason not to get the vaccine, we won't require it. And then fire these people who had a medical reason not to get the vaccine. They said specifically that they were afraid of getting the vaccine. They said that they had this condition of rheumatoid arthritis, which could possibly create adverse effects. They had a condition of Bell's palsy three years ago that could potentially happen again. I thought their doctor said don't get it. Their doctor said that, but their doctor may or may not have said that. They didn't provide Terminix with a note or documentation from their doctor saying I have a disability. My personal physician recommends me not getting this vaccine for fear of severe injury or death, which is what the dose case also requires. They did not have any medical proof to bring to their employer that they could not receive this vaccine. There was no substantiation that they had these medical conditions that would prevent them from getting the vaccine. Their employers are not medical professionals. They don't know how rheumatoid arthritis or how a one case of Bell's palsy or a vague heart condition are going to react with the COVID vaccine. A doctor is supposed to do that, but they didn't provide any medical documentation about how those conditions were going to be affected by the COVID vaccine. And the doctor would have need to say severe injury or death. So just being sick for a week because you got the vaccine, that's not enough. That's correct. And that's what the dose case that my friends on the other side are arguing. In the dose case, it says those those plaintiffs had notes from their doctor saying severe injury or death from the COVID vaccine. And I would argue that that's what these plaintiffs needed to provide as well. We spent a lot of time with opposing counsel on whether this is a disability or not. Judge Graves and I had an extensive discussion with Judge Haynes later. What it seems to me is unclear and not settled is, is this issue really one step removed from a disability? It does seem to me that it is true that maybe if they had better evidence. Put the evidence issue aside, that taking this vaccine would cause too substantial a risk of serious injury, which means they can't get it. It is a requirement of the job. It may be a bit of a gloss on the current most of the current law on the ADA, but it's pretty close. Why is this not sufficient? I would disagree and say that one, they're seeming to argue that they're the inability that they have is the inability or they're substantially limited from receiving the COVID vaccine. And that's not a major life activity. And if it does, you know, we take it that one step further and say that if they do have a disability, which we're not contending that theoretically, if they have a disability, it prevents them from the major life activity of working. But they haven't pled any specifics on what range or class of jobs they are substantially limited. Well, that's the oh, I'm sorry. I'm sorry. I guess it is something of a follow up. This may not clarify any, but let's say that there was good medical evidence that if this plaintiff took the vaccine, something that is indispensable to the work, the ability to use your arms. Would no longer be possible. I would be paralyzed. It's pretty good medical evidence that I would be paralyzed. Is that a better case? And if so, is it because it's more directly related to the job? I would say that that might be more of a case, but that's still a hypothetical situation that need to do a hypothetical figure out the law sometimes. And I'm trying to figure out where the flaw is in plaintiff's argument. And is it because a disability isn't the reaction to the vaccine is not in the category of disability? Or is it because the person doesn't have a disability at all at this stage? I would honestly say both. First, they don't have a disability at this stage because they don't have a physical impairment that substantially limits them from the major life activity of working. They were able to work with the rheumatoid arthritis. They were able to work with the heart condition. They were able to work with the case of Bell's palsy that happened a few years ago. I would argue that under the ADA, they need to have a current medical condition that prevents them from working. If we get into the hypotheticals, then everyone who takes any vaccine could say, well, I could potentially. You need strong medical evidence to support. So let's not go that far. Medical evidence is there. This vaccine is taken. Here is what's quite likely to happen. Whatever level of confidence you would require. If I take this vaccine, I'm going to be. I will go crazy. I will do whatever. Something will make the person unable to work. Is shouldn't the ADA protect against an employee having to do that? Or as opposed to losing the job? I don't. I'm not sure that's a legitimate legal question. Shoot it. So I'm really asking, does it? I would just argue that under the ADA, disability isn't the only problem. They also have to be substantially limited from a broad class of jobs. And that's what I wanted to ask about, because your opponent kept saying, well, every job that requires the vaccine. But that seemed to be a little bit of a swirl around to me. Because if other pest control companies were not only not requiring the vaccine, but screaming, We don't want the vaccine. Don't get it. Don't get it. Which there are plenty of people doing in this country. Why wouldn't that just work that they just go from Terminix to X? I would agree. And they didn't show any pleading that show anything in their pleading that they specific a numerosity in order to show that. You were limited from a substantial class of jobs. You have to show the number, the region, all of that. Would that end the case, even if we thought you all were very unethical in how you handled it? I would agree that that would end it under the ADA, which is the cause of action that they brought in federal court. They can't meet all of the elements. I would disagree that they can't meet any of the elements, but they can't meet substantially limits as well. And I think the point here is that hypothetically, you know, if, or theoretically, if we were to do discovery and show that they did have that medical condition, they didn't provide that information to Terminix when they had the opportunity to. The interoffice memo was presented to them. Terminix gave them time to speak to others, to get medical evidence. And one of them, you know, tried to contact their doctor. So they were, they had time to be able to get that documentation saying, hey, my doctor does not want me to take it. And they did not do that. They said, I'm afraid of getting that, the vaccine. I, you know, I'm afraid of the potential lifelong or, you know, long term effects of the vaccine. They didn't present anything to Terminix at that time. Terminix had no reason to predict the arguments that they're making here. And I think that that's one of the most important things is that about the argument that you just had COVID 90 days within the last 90 days, you're not supposed to get a vaccine. I don't think you're even allowed to if you've had COVID in the last 90 days. Right. So what about that person? I do think that, you know, that's still not a disability. Having COVID within the last 90 days, whether or not they could get the vaccine, they were not terminated because of a disability. Having COVID within the last 90 days, that COVID is not a disability. And they brought an ADA claim. So they need to show that they had a disability. Whether or not, you know, they were fired for other reasons, they did not have a disability. And that is the cause of action that they brought to the federal court. Okay. Yeah, I'm well aware we aren't supposed to look at what's ethical. But it's a little bit problematic to me that your company acted like that and didn't try to work with them. But I agree that's not determinative of the ADA. What can you tell us about the PREP Act and how that fits into this? I would say that it doesn't fit into this. I don't think that it is a preemptive. There's preemption. Well, it does have a preemption component to it. It says in conflict with the PREP Act or the EUA. And the PREP Act is essentially an immunity statute for the Secretary of State and for the federal government. It does not create a cause of action. So the at-will employment law does not conflict with that. They're not congruent. They don't conflict. And there is case law that says the PREP Act is not preempted. Or that the employment law and state law does not preempt. As it does not mandate, and that's Bridges v. Houston, the EUA does not mandate what a private employer must do and therefore does not conflict or preempt state at-will employment law.  Well, the PREP Act itself, Section 2A2, says the immunity under Paragraph 1, so can't be sued over it, but there's a compensation scheme. The immunity under Paragraph 1 applies to any claim for loss that has a causal relationship with what this is talking about, countermeasures. That word may go back to when the statute was created 80 years ago. I don't know. But it applies to the loss that has any causal relationship with one of those countermeasures. That's kind of what plaintiff is talking about here, it seems to me. There is a causal relationship between the vaccine and the loss of this job. I must say, first being told about how plaintiffs saw this fitting in with this litigation didn't come across as intuitively obvious, but there is something there that suggests that if the effects on the individual are related to the countermeasure, you're at least within the PREP universe. I would argue that they're not connected enough and that that wasn't congressional intent to do that. I believe that the congressional intent with that was any injuries that come from the vaccine itself, any physical harms that come from the vaccine itself, and the potential of losing your employment was not in that framework, is not related to this. While it talks about it, I don't think that it fits under preemption, which means that it creates a cause of action that both replaces and protects the analogous area of state law. That's not what's happening here. It mentions it, sure, but it doesn't directly conflict with state law. And if we were to take that argument, any federal law that mentions something, someone could bring a state law that also mentions that same thing, but they're not direct conflicts with one another. Everyone can file in federal court, which is what preemptive is trying to avoid. You know, the district court declined to decide the state cases. Why are we here? Why aren't you all just having your state cases dispute? They haven't filed anything in state court. And you all haven't talked about why not? No, I don't know why. That seems odd to me because I think a state court would probably be more helpful to your opponent than this ADA and PrEP arguments are. I don't know how to answer that for the opponent, but I would just say that there is no preemption going on here. You got anything else for us? Sorry, I'm just checking over my notes just to make sure I don't have anything else for you all. I think that's all I have for you all, but I really do appreciate it, and I just ask that you affirm the lower court's decision. Thank you. All right, counsel. Thank you. Do you want to address the reason why you all just didn't just go to state court and call it a day? Because federal court has original jurisdiction, and it does because . . . Here's the key with the PrEP Act. I know, but when I was a lawyer representing the district court, representing clients, I was trying to help them prevail ultimately, and so it seems to me . . . I understand you disagree with the district court's decision, but the district court left you the state court cases, and I'm just not understanding why those aren't being pursued. Well, we are pursuing an ADA claim, and that is brought in federal court, so that's why we're in federal court to begin with. Yes, there's jurisdiction in state court, but there's also jurisdiction in federal court, original jurisdiction, because the key about the PrEP Act is it is an immunity statute, but there's a quid pro quo. Because you're allowing immunity to the manufacturers, distributors, administrators, you must give something to the person who's a potential participant in that program, and that is voluntariness, and that's where the conflict comes in, because if the state allows the at-will employment doctrine to be used to turn the PrEP Act from a voluntary program into an involuntary one, there's the conflict. And since there's a conflict with those, and it's a substantial issue of federal law, which is the PrEP Act, there is original jurisdiction under Grable, because even though there's no private right of action under the PrEP Act, there is a preemption provision, and the preemption provision says that the establishing or continuing effect with any state law that conflicts with the PrEP Act is preempted. There's a specific preemption provision. That's where you get it, because these plaintiffs, they have to give up their due process rights, their equal protection rights. If the state allows this law to be used, then they're forced to be injected with a product that they don't want, and their doctors say, so are these plaintiffs required to get the shot to see if they have a reaction to it, to see if Ms. Piku's heart condition turns into myocarditis, which is a specific danger of these shots that Pfizer itself said was an adverse event? Is she required to do that? Is Mr. Chauvin required to take the shot and see if he gets Bell's palsy or something worse again? Well, Counselor, it seems to me, what's your response to what Mr. Olmstead said, which is no, but you needed legitimate medical evidence to show that probability, and it wasn't at this stage of the case that wasn't there. And I'm glad you mentioned that, because most of the arguments made by my opponent might fit if this was a motion for summary judgment. But this was on a motion to dismiss, and all of the allegations of the plaintiffs must be accepted as true. So there's no factual issues. You must accept what we have pled, and what we have pled is that they did all get notes from their doctors, and they informed their employer, we cannot get these shots, because we have a physical problem with doing so. And if this is now your job requirement to protect your customers, we can no longer fulfill the duties of this job. ADA claims. I mean, what you brought were ADA claims. Yes, sir. Yes, sir. And also a wrongful termination claim based on the use of the At-Will Employment Doctrine, which is preempted by the PREP Act, because it basically turns the voluntary nature of the PREP Act program into an involuntary one. And if the state allows employers to do that, you've just undermined the entire quid pro quo of the PREP Act that says you must be educated on the voluntary nature of the program. That's the conferred right in the PREP Act for these plaintiffs. And that's where the conflict is, because the use of the At-Will Employment Doctrine vitiates that. It vitiates the voluntary nature of the program, and that cannot be the case. And because there is a preemption provision in the statute, there is original jurisdiction in this court, and there's not going to be a flood of plaintiffs coming into federal court. So, as we know, after the last 33 years of practicing law, I know plaintiffs like to be in state court. But if there's a federal cause of action, you can bring it, and you can enjoy the efficiencies and quickness of a federal jurisdiction. And that's what we did in this case, and that's why we chose this forum. Because we can, and because we have the right to do so under the Grable case. Thank you. You just referred to the efficiencies of the federal system. We'll see if we can live up to that. Thank you, Your Honor. We appreciate the assistance from both counsel today on this case. We'll take it on advisement. We are in recess until tomorrow.